GAINES *et al.* *v.* GAINES, executor.

· A petition filed by an executor against all the heirs at law of his testator and all parties interested, which is based upon the principles embodied in the Civil Code, § 4000, is sustainable, even although individual transactions of the plaintiff may be involved, it appearing that the estate is interested in all of the property covered by the suit, and that the defendants are or may be interested in such property; all of the allegations of the petition being connected with the distribution of the estate.

Argued October 10, — Decided October 30, 1902.

Equitable petition.   Before Judge Fite.   Bartow superior court. January 2, 1902.

Lewis P. Gaines, as executor of the will of Reuben Gaines, and in his own right, filed a petition for direction, injunction, and other relief.   The will, a copy of which is attached to the petition, contains the following provisions:   "Item 1st.   I hereby appoint as my executor to carry out this will my son, Lewis P. Gaines, . . . and he shall not be required to give bond as such, nor make returns to any court.   He shall have power to sell any property, real or personal, belonging to my estate, either at public or private sale,

and for cash or on a credit, as in his discretion he may deem best, and shall have power to execute such deeds or bills of sale as may be necessary to perfect or consummate any sales made by him." Item 2 directs that the testator's debts be paid. "Item 3d. Should my present wife, Mrs. Alice Gaines, after my death prefer to surrender to my estate the land I conveyed to her under our marriage contract heretofore made, known as the L. C. Fields place, . . and accept in lieu thereof such legacy and devise as I make to her by this my last will and testament, I do in that event hereby bequeath and devise to her my house and lot in the town of Adairsville (describing it), said house and lot to belong to my said wife in fee simple, and also bequeath to her an annuity of one hundred and fifty dollars per year, to be paid to her annually by my executor, through her natural life and widowhood; but should she marry again, the said annuity shall cease, and my said executor shall pay her the sum of one thousand dollars on her marriage, and nothing more. Should my said wife decline to surrender to my estate her said right and title to the L. C. Fields place under our marriage contract, then the devise and bequest herein provided for her shall not take effect nor be given to her." Item 4 gives certain land to the testator's sons Henry W. Gaines and Lewis P. Gaines, and his grandson James P. Gaines, as tenants in common; and Item 5 gives other land to said grandson. "Item 6th. It is my will and desire that my executor shall, as soon as in his discretion it is wise and prudent, convert all the rest and residue of my estate that I may own at my death, including realty and personalty and choses in action, into money, and after payment therefrom of all my debts and the costs and expenses of administration, and setting apart therefrom a sufficiency to pay the specific legacy provided for my wife in Item 3d of this will, in the event she accepts such legacy on the condition therein specified, he, my said executor, shall divide the balance of the funds of my estate remaining into eight equal shares, and shall pay one of said shares to my son Henry W. Gaines, one share to my daughter Mrs. Susan L. Gray, one share to my son Milton P. Gaines, and one share to the three children of my deceased daughter, Mrs. Martha L. Benson, one share to the three children of my deceased daughter, Mrs. Sarah King, one share to himself, the said Lewis P. Gaines, for his own use, and one share to himself in trust for my son James M. Gaines,

which the said Lewis P. Gaines shall hold, use, and expend for the support and maintenance of the said James M. Gaines, one share to my wife, Mrs. Alice Gaines." Item 7 provides that in the event of a contest of the will by any devisee or legatee, he or she shall receive nothing under the will.

The petition was presented August 21, 1900. It appears from it that the testator died November 16, 1899, and at that time had, in addition to real estate, $5,905.40 in cash, solvent notes for money due him, amounting to about $2,442.70, certain personal property which the executor has sold for $1,771.59, and some personalty of comparatively small value which, for reasons stated, is not yet disposed of. It is alleged, in substance: (Paragraph 4) The will was executed December 23, 1898, and on the same day, just prior to its execution but in connection with it, the testator executed six deeds of conveyance, one of them to petitioner, one to Henry W. Gaines, one to Milton P. Gaines, one to Susan L. Gray, one to Emma B. Dyar, Mary Thomas, and Mattie Benson, and one to Mrs. L. E. Alford, Mrs. Elona Anderson, and Mrs. Mattie Carson, by which deeds he undertook to convey separate parcels of his land to the respective grantees named. (Copies are attached.) The testator did not, on the day he executed the deeds, deliver any of them to the grantees, but in May, 1899, delivered to petitioner the deed made to him, and delivered to Henry W. Gaines the deed in which he was named as grantee. The remaining four deeds were retained by the testator and kept in a bureau drawer at his home, and were not during his lifetime delivered to any of the grantees, so far as petitioner knows or is informed. (Paragraph 5) On information and belief petitioner avers that the will and the deeds were executed pursuant to a plan adopted by the maker for the distribution of his estate among his children and grandchildren, his intention being to deliver all the deeds prior to his death, and to permit the will to operate upon and dispose of the remainder of his estate, not included in the deeds. It so happened, however, that he died without delivering any of the deeds, except the one to petitioner and the one to Henry W. Gaines; and after his death petitioner found the four undelivered deeds with the will, among other valuable papers, in the bureau drawer, and took charge of them as executor and has since held possession of them, being in doubt as to what his duty was in regard to them. (Paragraph 6)

When he came to make an inventory of the property of the estate and to have the property appraised, he was in doubt whether to have the lands described in the four undelivered deeds appraised as property of the estate or not. He put a description of these lands in his inventory, but informed the appraisers, by written statement accompanying it, of the situation of affairs in regard to the deeds. The appraisers, in making the appraisement, put a valuation on these lands, to be taken as an appraisement provided it should be held by the courts that they belonged to the testator's estate, but otherwise not to be taken as an appraisement. (Paragraph 7) Petitioner employed counsel and took legal advice in regard to the matter soon after the death of his father, and was willing and anxious to deliver these four deeds to the grantees, provided he could safely do so; but being advised that he could not with safety to himself take the responsibility of delivering the deeds and turning over the lands to the grantees, without the direction of the court or the unanimous consent of the legatees and devisees named in the will, he did not deliver them. In the meantime a portion, if not all, of the defendants named in this petition were threatening to contest the probate of the will and to attack the deed made by the testator to petitioner, and had retained counsel with this end in view. A few days before the hearing for the probate of the will in solemn form was to come on, the husband of one of the defendants asked petitioner to draft an agreement for signature by all the legatees and devisees, agreeing that the four undelivered deeds might be, by the executor, delivered to the several grantees and be as valid as though delivered by the testator in his lifetime, he (Rosser Thomas) stating that if petitioner would sign such an agreement he believed all the legatees would sign it. Accordingly petitioner had his counsel to draft such an agreement, and signed it, but, in consequence of the refusal of one of the devisees to sign it, he was left to act on his own responsibility or else apply to the court for instruction in the premises.

(Paragraph 8) Petitioner obtained his letters testamentary as executor in January, 1900, and is advised and believes that at the expiration of twelve months from that date he will be subject to a suit for accounting and settling by the legatees of the estate, and that they are threatening that they will bring such a suit immediately on the expiration of the twelve months. Under the will pe-

titioner is vested with full discretion to sell the lands of the estate, not specifically devised, either at public or at private sale, for cash or on credit, and at such time as he deems best for the interest of the estate. He has no desire to prolong the administration or unnecessarily delay the distribution of the estate, but desires to use his discretion wisely in selling the lands to the best advantage. He is in doubt whether it is his duty to treat as part of the estate the lands described in the four undelivered deeds and sell them, as executor, for distribution, or not. He has no desire to do so unless such is made his duty by law, but prefers, if properly authorized, either by decree of the court or by unanimous consent of the legatees, to deliver each of the four undelivered deeds to the respective grantees, and to turn over to them respectively the lands described therein, believing as he does that such was the real intent of the testator. (Paragraph 9) By the third item of the will the testator devised and bequeathed to his widow a house and lot, and an annuity of $150 to be paid annually by the executor during her life and widowhood, but provided that should she marry again the annuity should cease and the executor should in that event pay her $1,000 on her marriage, and nothing more, except as provided in the sixth item of the will. This bequest and devise, however, is made on condition that she shall surrender to the testator's estate the land known as the L. C. Fields place, previously conveyed to her by him in a marriage contract. (Paragraph 10) Since the testator's death his widow has notified petitioner of her election to take under the will the legacy and devise aforesaid and surrender to his estate all her right and title to the L. C. Fields place under the marriage contract. By this election the Fields place will become assets of the testator's estate and subject to sale for distribution to the legatees indicated in the will. (Paragraph 11) In order to provide the annuity of $150 for payment to the widow under the bequest to her, it will be necessary for petitioner to retain enough of the estate to yield the required annuity, and petitioner is in doubt as to what would be the best method for securing and providing for the payment of the annuity. The L. C. Fields place for several years has been yielding in rents from $150 to $175 per annum, out of which taxes and repairs are to be paid; and it is petitioner's judgment that said farm, under ordinary circumstances, would approximately yield annually about $150 per annum rent, and

that, as this investment is already made, no better or safer invest-
ment could be found for producing the annuity aforesaid; but peti-
tioner will ask the aid and direction of the court in regard to the
investment.    (Paragraph 12)    Petitioner is informed that a por-
tion, if not all, of the legatees would probably prefer that the pres-
ent cash value of said annuity be ascertained and paid to the widow
by the executor in satisfaction and extinguishment of the annuity,
rather than that the annuity should continue payable in yearly in-
stalments during her life; also that the widow would probably pre-
fer payment to her of the present cash value, provided it be fixed
at not less than $1,500, her age at the death of the testator being,
as petitioner is informed, forty-seven years, and according to the
annuity tables the present cash value would be a little more than
$1,500.    If such direction can be given by the court as will en-
able petitioner to pay the present cash value of the annuity, it will
be preferable to petitioner, because he can by such means wind up
the estate more speedily.

(Paragraph 13)    By the 6th item of the will the testator be-
queathed to petitioner in trust for James M. Gaines, who is of un-
sound mind; one eighth of the residuum of the estate remaining af-
ter paying the specific legacies mentioned in the will, and the costs
and expenses of administration, and directed petitioner, as such
trustee, to hold, use, and expend said bequest for the support of
James M. Gaines.    By the deed of the testator to petitioner, men-
tioned above, a part of the consideration is recited to be the cove-
nant and promise by petitioner to provide and furnish the said
James, for and during the latter's natural life, a comfortable sup-
port and maintenance, and at the death of said James, to pay to
said James's children then surviving $200 each.    Prior to the
making of this deed and of the will, petitioner, as guardian of said
James, had come into the possession of $600 belonging to said
James, paid to petitioner as such guardian by said Reuben Gaines,
which until the testator's death constituted almost the only source
of income for the support of said James.    Petitioner is informed
and believes that some of the defendants in this case and their
counsel contend that it is petitioner's duty, under the terms of his
father's deed to him before mentioned, to support and maintain
said James as a part of the consideration of said deed, and that pe-
titioner has no right to use either the corpus or the income of the

legacy bequeathed in the will to petitioner as trustee for said James, or the $600 held by petitioner as his guardian. Petitioner does not understand the meaning of the will and the deed, and contends that it was the intention of said Reuben Gaines by said deed to provide that said James should have a support from petitioner in the event the legacy provided for him in the will and the $600 held by petitioner as guardian should prove insufficient for such support. If petitioner's contention is not correct, he submits that at least the annual income from the legacy to·said James and from the said $600 is, under the provisions of the will and the deed, subject to be applied for the support of said James, and that only in the event the same should prove inadequate for such support was petitioner to be required to provide at his own expense additional money for that purpose. (Paragraph 14) Certain of the defendants in this case (named), joining as petitioners with J. A. King of the State of Texas, and with W. M. Cartlidge of that State, assuming to sue as next friend of James M. Gaines, have commenced a suit against petitioner in the superior court of this county, which is docketed to the July term, 1900. Petitioner prays leave of reference to the original complaint of file in said court, without attaching a copy as an exhibit to this petition. (Paragraph 15) The defendants herein, together with their coplaintiffs named above, by their said complaint are attacking the said deed of Reuben Gaines to petitioner, and for grounds of attack allege that petitioner procured the deed from Reuben Gaines by fraud and undue influence, and that he, at the time of making the deed, was of unsound mind and did not understand the nature and consequences of his act, and did not in fact make the deed; all of which petitioner denies. Said plaintiffs further allege therein that the personal interests of this petitioner conflict with his duty as guardian to said James, and with the interest of said James in the estate of said Reuben, under the will, and in the subject-matter of said suit; said plaintiffs averring that it is to the interest of said James that said deed to petitioner be canceled and set aside, while it is to petitioner's interest that the deed should prevail. They further allege therein that petitioner fails and refuses to take any steps to protect the interests of said James in the premises, and is acting directly against the interests of his said ward; and they pray for the cancelation of said deed to petitioner, and that the property described

in it be adjudged the property of said decedent's estate and be distributed as the residue of the estate; and that this petitioner be held liable for the rents, issues, and profits of the land. (Paragraph 16) Petitioner has filed his demurrer and plea to said complaint, and he prays leave of reference thereto without being required to attach a copy as an exhibit to this petition. Petitioner insists on said demurrer and plea and reaffirms the truth of the statements in the plea.

(Paragraph 17) Said Cartlidge is not a suitable person to act as the next friend of said James M. Gaines, being a resident of the State of Texas, owning no property in the State of Georgia, and, as petitioner is informed and believes, owning but little property anywhere. Petitioner charges that said Cartlidge joined in said complaint as next friend, not for the bona fide purpose of promoting the real interest of said James or benefiting his estate, but only for the purpose of aiding his coplaintiffs in their effort to set aside petitioner's deed from said Reuben Gaines. It is to the interest of said James that said deed be sustained, because it secures him a comfortable support for life, which, in view of his apparently permanent insane mental condition, would be far more valuable to him personally than an undivided eighth interest in fee in the proceeds of the land described in the deed would be; especially so after deducting a conditional fee of one fourth of the recovery for counsel fees, which petitioner is informed and believes said plaintiffs have agreed to pay their counsel for his services in said case. Should said deed be set aside, said land would have to be administered as a part of the estate of said Reuben Gaines, and be distributed under the residuary clause of said will; whereby an undivided eighth thereof, after deducting costs, fees of counsel for plaintiffs, and the expense of administration, would belong to said James; and said share would be far less valuable to said James than would be the provision for him during his life, by said deed. Petitioner has filed a motion to strike the name of said James from said complaint, and to disallow said Cartlidge to appear therein as next friend for him. (Paragraph 18) The interest of said James is in harmony with petitioner's interest in sustaining said deed, both because it is pecuniarily more beneficial to said James than his share of the land would be under his father's will, if the deed were set aside, and because no legal or equitable ground exists to authorize the setting aside of the deed. But petitioner admits

that it is proper that said James should be represented by a guardian ad litem in the present suit, on the question of the construction of said deed, and of the bequest made in the will to petitioner in trust for said James, as to whether petitioner by said deed is chargeable with the support of said James for and during his life, to the exoneration of said bequest and of the rest of said James's estate in the hands of petitioner as his guardian, or whether the support of said James chargeable on petitioner by the deed is supplemental only to the legacy and other estate of said James, and to be furnished him only in the event such bequest and other estate should prove inadequate for his support; petitioner making the latter contention, while the pecuniary interest of said James would be more highly promoted by the former contention. For these reasons petitioner has made said James a party defendant to this suit, and, after service is perfected on him, will ask the court to appoint a suitable guardian ad litem for said ward, but not the said Cartlidge or any other partisan of either of the contending parties in this case.

(Paragraph 19) Petitioner is in doubt as to his duty as executor in regard to the lands described in the deeds other than the two made to petitioner and to Henry W. Gaines; for he is informed and believes that said Reuben Gaines did not actually hand them over to the grantees therein named, but kept them in a drawer of his bureau. Petitioner is willing, if all the legatees interested in the estate will consent, or if the court can so order and decree, that said deeds be delivered, and, together with the two deeds to petitioner and H. W. Gaines which were delivered by said Reuben, be declared valid and effectual to convey to each grantee the lands described in his or her deed. On information and belief petitioner avers that the scheme of said Reuben, in disposing of his property, was to convey in his lifetime to his children and grandchildren the lands described in the deeds, excepting and reserving to himself an estate therein for his own life, and by his last will dispose of the remainder of the property that might belong to him at his death, as indicated in the will; the will and the deeds being all signed by him on the same day. Although it might be for the pecuniary advantage of petitioner to hold the lands described in said undelivered deeds, as being assets of the decedent's estate, on account of his failure to deliver the deeds, yet he does not desire to

do so, and is willing, if the court will allow it or all parties will consent, that all the deeds be made effectual, both the delivered and the undelivered deeds; or if the grantees named in the alleged undelivered deeds can show that said Reuben Gaines did in fact deliver them in any way to give them validity, petitioner is willing that they be proved and declared valid. (Paragraph 20) It is now near the time of the year when said lands should be rented for the coming year, if good tenants are to be secured. If there were no doubt as to the lands being assets of said estate, petitioner, as executor, would have the discretion to sell them at public or private sale, at such time as in his discretion would be best for the estate and for the legatees, but in view of the situation of affairs he does not think it advisable to attempt to make a sale until the difficulties stated are cleared up and removed, and he will ask the court to consider the same and by interlocutory order direct him in the premises. (Paragraph 21) There are no unpaid debts or liabilities outstanding against said Reuben Gaines, so far as petitioner knows or believes, the deceased being a man who rarely ever incurred debts, and those he did incur were unusually small. There is in the hands of petitioner some cash belonging to said estate, which he thinks might be distributed now, except such reasonable sum as it may be necessary to retain for the expenses of administration, and for the payment of the specific legacy to decedent's widow. One or two of the legatees have been insisting that he should make payments on their legacies directly to them, denying that they had employed counsel to collect the same for them, but Judge John W. Akin and the firm of Starr & Erwin have notified petitioner's counsel that they represent said legatees, and that petitioner should make all such payments to them as counsel for said legatees. In view of these conflicting contentions, petitioner does not know to whom he should make such payments when he is ready to pay. (Paragraph 22) Petitioner desires to wind up said estate and have a settlement with all the legatees, and to that end will ask the court in this suit to direct him in the administration of the estate and in the discharge of his duties in executing the will, and that the legatees, all of whom are made parties to this suit, be brought to a settlement and accounting with petitioner as executor, and that the several shares and legacies may be ascertained and fixed, so that petitioner may safely pay out the same.

(Paragraph 23)   Inasmuch as a number of the legatees are by their said complaint attacking the deed of Reuben Gaines to petitioner, charging that petitioner procured it by fraud and undue influence, and are insisting that the lands therein described should be declared assets of the testator's estate, to be distributed under the residuary clause of the will, all of which petitioner denies, it becomes material to the proper administration of the estate that the validity of said deed be inquired into and adjudicated, before the estate can be finally wound up and petitioner discharged as executor.   Whether said land is or is not assets of said estate, and if so, how the same should be administered and distributed, is a proper matter to be determined on this petition for direction and for marshaling and distributing the estate; which, with all other questions and difficulties, petitioner desires to have inquired into and adjudicated in this suit, so as to avoid a multiplicity of suits.   (Paragraph 24)   Just prior to the death of said Reuben Gaines, he had sowed a wheat crop on the land described in his deed to petitioner, which crop grew on the land and was matured and harvested during the summer of the present year.   Petitioner is advised by his counsel that although the right to possession of said land vested in petitioner individually under said deed, immediately on the death of said Reuben, yet that the crop of wheat belongs to his estate as emblements, under the law, and that the proceeds of the crop, less the expense of harvesting and marketing, would belong to said estate.   Acting on this advice, petitioner has kept an account of the expense of the harvesting of the crop, and will, under the order of this court, make and file an account, when required, of the receipts from the sale of the crop and of the disbursements made in the harvesting and sale of it.   While petitioner has thus acted on the advice of his counsel and is willing to abide the law determining the ownership of the crop, yet, with the consent of his counsel, he asks the court to consider the question as to how or in whom the crop was vested on the death of said Reuben; and if petitioner's counsel should have mistaken the law on this point, petitioner asks the court to decide and declare whether or not petitioner, by virtue of his said deed, has a right to any portion of the crop as the owner of the estate in remainder in the land, expectant on the death of said Reuben.

(Paragraph 25) Petitioner, in his own right and not as executor

of said estate, took charge of the land under his said deed soon after the death of said Reuben, and claims title to it by virtue of said deed; and, notwithstanding the charges made against the fairness and validity of said deed by the other legatees, he avers that he used no fraud or undue influence on said Reuben to procure him to make the deed, and it was made by him when he was fully capable in mind and body to transact such business. When he made the deed, as well as when he delivered it to petitioner, he fully knew and understood what he was doing, and did it freely and voluntarily, and without constraint or fraud from any source. For these reasons petitioner denies that his duty as executor requires him to return said land as an asset of said estate; and in order to quiet and settle his title to the land as an individual, as well as to protect himself as executor, and in order to settle and distribute said decedent's estate properly and have said deed and the will construed on the points of difficulty hereinbefore suggested, petitioner brings this suit both as executor and in his own right as an individual. (Paragraph 26) On information and belief petitioner avers that the defendant H. W. Gaines, though holding the original deed made and delivered to him by his father on the same day that petitioner's deed was made, asserts that he intends to refuse to claim said land, and will surrender it to the testator's estate, claiming that said Reuben Gaines was mentally incompetent to make said deeds; but he has never made or offered to make such surrender. Petitioner insists that both deeds are valid; but if petitioner's deed is not valid, said H. W. Gaines's deed is also invalid, and he should be required either to affirm or deny the validity of both and act accordingly, or be estopped from attacking petitioner's deed.

The prayers are: (a) that the court sanction the petition and allow it filed as a proper suit for direction to petitioner as executor, and for construction of the will and of said deed to petitioner, and for settling the difficulties in the administration of the estate and in the distribution suggested, and also as a suit declaring what are the proper assets of the estate, and for an accounting and settlement between petitioner as executor and each legatee under the will, so that the estate may be fully settled in this one suit finally; (b) that the court inquire and by decree declare whether or not the lands described in the deeds copied in the exhibits are assets of the testator's estate, and whether the deeds are or are not valid and ef-

fectual to convey to the grantees therein named the lands described in them, and if not, then whether any right or equity exists in favor of said grantees for a decree perfecting the deeds or vesting in the grantees the title to the lands; (c) that the deed of Reuben Gaines to petitioner be decreed to be valid and the title to the land therein described fully vested in petitioner as provided in the deed, and that the same is not assets of the testator's estate; and that the court further declare by decree whether the wheat crop sowed on the land by the testator in the fall of 1899 and harvested in the summer of 1900 belongs wholly to the testator's estate, or whether any portion of the crop belongs to petitioner by virtue of his title to the land ; (d) that the court by decree construe the deed from the testator to petitioner and also the bequest to petitioner in trust for James M. Gaines, and determine whether the deed puts upon petitioner individually the full support and maintenance of said James, as part consideration for the deed, to the exoneration of said bequest and the other property of said James from use for such support, or whether the charge put upon petitioner by said deed only requires him to furnish support and maintenance to said James in the event said bequest and other property of said James prove inadequate for the purpose ; and that the court give the deed the latter construction ; (e) that the court confirm the election of the testator's widow to take the legacy provided for her, and to relinquish her claim to the land known as the Fields place and surrender the same to the testator's estate to be distributed as provided in the will ; that the court direct petitioner, as executor, as to making a proper investment to secure an annual income to pay the annuity provided by the will to be paid to the widow, or that, by consent of parties to this suit, the court may ascertain the present cash value of said annuity and order the amount so ascertained to be paid to the widow in satisfaction of said annuity; and, if the court shall direct that the annuity be paid annually as it accrues, that the court set apart said Fields place as an investment to be held by petitioner as executor, for producing the annual income to pay the annuity ; (f) that the court direct petitioner, by interlocutory orders, when and how much of the funds of the estate he shall distribute and pay over to the legatees of the estate from time to time pending this suit, but allow a sufficient sum to remain in his hands as executor to defray all expenses of adminis-

tration and other charges with which the estate may be legally chargeable, including the annuity for the widow, and that the court may inquire and direct petitioner as to whether such payments on legacies shall be made to each legatee in person, where the legatee denies having employed counsel, or to the attorney claiming to represent the legatee ; (g) that the court may by interlocutory order authorize petitioner as executor to rent out the lands described in exhibits, for the year 1901, as early as practicable, to suitable tenants, and that said lands be not sold until it is determined whether they are properly assets of the estate or belong to the grantees named in the deeds; (h) that the court take an accounting of testator's estate and determine fully what are the assets thereof, and that, by and through petitioner as executor acting in conformity to the will and under the direction of the court, all of the assets be converted into cash as speedily as is prudent and practicable, and that the share of each legatee be ascertained and the amount ordered paid to each thus entitled ; that in taking the account and making the settlement the court may allow to petitioner as executor all proper disbursements out of the estate on the testator's debts, expenses of his last illness, funeral expenses, taxes, and all charges incurred in managing and administering the estate, a true account of which petitioner will report to the court from time to time as the court may order; and that the court may also allow, as a credit to petitioner as executor, a proper amount for his commissions and expenses in administering the estate, including reasonable counsel fees for his attorneys; (i) that each of the defendants be enjoined from prosecuting further said complaint against petitioner, in which they seek to set aside petitioner's deed from his father, and that the validity or invalidity of the deed be inquired into and adjudicated in this suit only, and multiplicity of suits concerning assets claimed to belong to the testator's estate be avoided and all matters of dispute concerning said estate settled in this suit; (j) that the court appoint a guardian ad litem for said James M. Gaines; and (k) for general relief and for process.

The demurrer was on the following grounds: No cause of action is set forth, nor does any equity appear, nor does the petition disclose any necessity for equitable interference. There is a misjoinder of causes of action, in that the executor prays for direction and the individual prays for relief in his personal interest against

other legatees under the will and other heirs of the deceased. The difficulties on the part of the executor are caused by his own acts and by his personal contentions, and issues made by such contentions in his own behalf as against other legatees and other heirs; and the petition shows that the executor is not without fault. The petition shows no necessity for the application by plaintiff as executor for direction. The petition shows that the deeds referred to in paragraph 4, except the one to Henry W. Gaines, are invalid, because never delivered; and as to the Henry W. Gaines deed the petition shows, in paragraph 25, such repudiation of that deed by him as estops him from hereafter setting it up. Paragraph 7, after the first sentence, is demurred to as irrelevant and impertinent; and paragraphs 8, 9, 13, 17, 18, 22, and 24 are demurred to for the same reason, and as stating conclusions of the pleader. Paragraphs 14, 15, and 16 are demurred to, because no copies of the pleading in the case referred to are set forth as exhibits or otherwise, because no sufficient reason appears for amalgamating the issues presented in that case with those in this, and because they show no reason why said suit should be interfered with. Paragraphs 21 and 24 are demurred to because no amount is stated therein.

*John W. Akin*, for plaintiffs in error.
*R. J. McCamy* and *J. M. Neel*, contra.

ADAMS, J.   The petition in this case was filed after that dealt with in the case of *Gaines* v. *Gaines et al.*, ante, 475, the present defendant in error being the defendant in the court below. It was filed under the provisions of the Civil Code, § 4000. All the questions involved are connected with the distribution of the estate. All the parties concerned under the will or as heirs at law are made parties defendant. The petition contains abundant equity, and complete justice can be done in the case made without the violation of any rule of law or practice known to us. We have read the petition, which the learned judge of the court below sustained against a demurrer filed on various grounds, not only with attention but with pleasure. It is a model of lawyerlike clearness, precision, and skill. We are satisfied that the court below was right in sustaining it and in overruling the demurrer. No useful purpose will be subserved by quotations therefrom or a detailed

discussion of its allegations.   Let the judgment of the court be-
low be

*Affirmed.   All the Justices concurring, except Lumpkin, P. J.,
absent.*